No. _____

---

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

———————

### CLARENCE DAVIS,

*Plaintiff/Petitioner,*

### vs.

### CAPITAL ONE,

*Defendant/Respondent.*

———————

**Appeal From the United States District Court**
**For the Eastern District of Virginia**
**Alexandria Division**

———————

## PETITION FOR PERMISSION TO APPEAL FROM ORDER DENYING
## CLASS CERTIFICATION PURSUANT TO FED. R. CIV. P. 23(f)

———————

**James S. Wertheim (0029464)**
**LawHQ, PC**
**299 S. Main St., #1300**
**Salt Lake City, UT 84111**
**(ph.) 385-285-1090**
**jim@lawhq.com**

**Terry C. Frank (VSB No. 74890)**
**Terry Frank Law**
**108 E. Grace St., Suite 01**
**Richmond, VA 23219**
**(ph.) 804-899-8089 • (fax) 804-899-8229**
**terry@terryfranklaw.com**

*Attorneys for Plaintiff/Petitioner*

**Table of Contents**

PRELIMINARY STATEMENT.................................................................1

BACKGROUND AND RELEVANT FACTS ......................................4

STATEMENT OF ISSUES PRESENTED. .......................................6

THE RULE 23(f) STANDARD.........................................................7

ARGUMENT .....................................................................................8

   I.  The District Court Opinion Contains Substantial Weaknesses ......................8

      A.  The District Court Ignored This Circuit's Ascertainablity Standard.........8

      B.  Even Under the Wrong Standard, Plaintiff's Expert Methodology
          Satisfied The Ascertainability Standard ...................................11

         1)  Plaintiff is the Proof of Concept.........................................11

         2)  The Expert's Core Methodology has been Accepted by this Court
             and Many Others .........................................................13

      C.  The Issue of Consent does not Create a Predominance Issue .................16

   II.  The Appeal will Permit the Resolution of a Legal Question of General
      Importance Because Allowing the Decision to Stand Will Create
      Substantial Uncertainty in a Frequently-Asked and Critical Question of
      Law: What is the Standard for Ascertainability in this Circuit?...................18

   III.The Denial of Class Certification is Dispositive Here, and Immediate
      Appellate Review is Necessary and Appropriate .........................................21

RELIEF SOUGHT ...................................................................................23

# Table of Authorities

## Cases

*Accord In re White*, 64 F.4th 302 (D.C. Cir. 2023) .................................................7

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ...........................................20

*Birchmeier v. Carriban Cruise Line, Inc.*, 302 F.R.D. 240 (N.D. Ill. 2014) .........20

*Bryant v. King's Creek Plantation, L.L.C.*, No. 4:20-CV-00061, 2020 WL 6876292 (E.D. Va. June 22, 2020) ........................................................................17

*Byrd v. Aaron's Inc.*, 784 F.3d 154 (3d Cir. 2015) .............................................. 18, 21

*Campbell v. Fawber*, 975 F. Supp. 2d 485 (M.D. Pa. 2013) ....................................10

*EQT Prod. Co. v. Adair*, 764 F.3d 347 (4th Cir. 2014) .........................................7, 19

*Gaston v. LexisNexis Risk Sols., Inc.*, 483 F. Supp. 3d 318 (W.D.N.C. 2020) ........20

*Head v. Citibank, N.A.*, 340 F.R.D. 145 (D. Ariz. 2022) .........................................17

*Hunter v. Time Warner Cable Inc.*, No. 15-CV-6445 (JPO), 2019 WL 3812063 (S.D.N.Y. Aug. 14, 2019) .............................................................14

*In re White*, 64 F.4th 302 (D.C. Cir. 2023) .............................................................22

*In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18-MD-2836, 2020 WL 5778756 (E.D. Va. Aug. 14, 2020) ...............................................................9, 19

*In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18MD2836, 2021 WL 3704727 (E.D. Va. Aug. 20, 2021) ........................................................................9, 20

*In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18-MD-2836, 2021 WL 9870367 (E.D. Va. May 7, 2021) ........................................................................21

*Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 391 (M.D.N.C. 2015) .............14

*Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643 (4th Cir. 2019) ..................................................... 1, 3, 8, 10, 14, 17, 19

*Krakauer v. Dish Network, L.L.C.*, No. 1:14-CV-333, 2015 WL 5227693 (M.D.N.C. Sept. 8, 2015) .........................................................................9

*Krakauer v. Dish Network, L.L.C.*, No. 1:14-CV-333, 2018 WL 11429948 (M.D.N.C. Jan. 25, 2018) ........................................................... 3, 8, 10, 14

*Krakauer v. Dish Network, LLC*, No. 1:14-CV-333, 2018 WL 11429949 (M.D.N.C. Apr. 5, 2018) .............................................................. 3, 10, 14

*Marcus v. BMW of N. Am., LLC*, 687 F.3d 583 (3d Cir. 2012) ...............................19

*Mey v. Venture Data, LLC*, No. 5:14-CV-123, 2017 WL 10398569 (N.D.W. Va. June 6, 2017) ..................................................................20

*Samson v. United Healthcare Servs., Inc.*, No. 2:19-CV-00175, 2023 WL 6793973 (W.D. Wash. Oct. 13, 2023) ....................................16

*Vance v. DirecTV, LLC*, No. 22-1958 (L), 2023 WL 6618922 (4th Cir. Oct. 6, 2023) ..................................................................10

*Vance v. DirecTV, LLC*, No. 5:17-CV-179, 2022 WL 3044653 (N.D.W. Va. Aug. 1, 2022) ..................................................................10

*Watson v. Manhattan Luxury Automobiles, Inc.*, No. 20 CIV 4572 (LGS), 2022 WL 4586407 (S.D.N.Y. Sept. 29, 2022) ........................15

*Wesley v. Snap Fin. LLC,* 339 F.R.D. 277 (D. Utah 2021) ....................................17

*Wesley v. Snap Fin. LLC,* No. 21-600, 2022 WL 482156 (10th Cir. Feb. 16, 2022) ..................................................................17

*Williams v. Big Picture Loans, LLC*, 339 F.R.D. 46 (E.D. Va. 2021) .................8, 19

*Williams v. Martorello*, 59 F.4th 68 (4th Cir. 2023) ...........................................8, 19

*Williams v. PillPack LLC*, 343 F.R.D. 201 (W.D. Wash. 2022)...........................16

*Zenith Labs., Inc. v. Carter-Wallace, Inc.*, 530 F.2d 508 (3d Cir. 1976) ...............22

**Other**

7A Charles Alan Wright *et al.*, *Federal Practice and Procedure*, § 1760 (3d ed. 2005)..................................................................8

## PRELIMINARY STATEMENT

To certify a class in the Fourth Circuit, must a Plaintiff do more than define the class in such a way that its members can be readily identifiable at some point in time? This Circuit has always held that that is all that is required, and a class can be decertified if the methodology later proves deficient. But the District Court, in excluding Plaintiff's notice expert and denying class certification because of a lack of an ascertainable class, heightened the ascertainability standard to require an expert to identify class members and definitively prove administrative feasibility at the certification stage. Either the District Court applied an incorrect standard, or other courts in this Circuit have been applying the wrong standard. In either scenario, this Court's review is urgently required.

Plaintiff asserts a single, straightforward claim: that Capital One, N.A. ("Capital One") made non-emergency, prerecorded calls to the cellular telephones of class members—who, by class definition, were not Capital One customers—in violation of 47 U.S.C. § 227(b) of the Telephone Consumer Protection Act of 1991 (the "TCPA"). This Court has observed that the TCPA is a "simple and administrable statute," and thus "TCPA claims [are] amenable to class action resolution." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 663 (4th Cir. 2019).

Indeed, the District Court found virtually all of the Federal Rule 23 requisites plainly satisfied here: numerosity, typicality, commonality, adequacy,

and superiority. *See* ECF No. 172 at 21. Moreover, the District Court expressly acknowledged that Plaintiff's expert, Ms. Anya Verkhovskaya, has "extensive experience as an expert witness **with respect to identifying class members** for the purpose of providing notice in TCPA cases. ... The Court finds **no deficiencies in her credentials** that would disqualify her as an expert in this case." *Id.* at 10 n.6 (emphasis added).

Despite this, the District Court denied class certification by applying a new, heightened standard of ascertainabilty and striking Plaintiff's expert's opinions.[1] The ostensible basis for these determinations was that the admitted highly-qualified expert had not *proven,* before the class was certified, that under *Daubert* she had identified class members. In doing so the District Court improperly weighed her testimony and the data on which she relied.[2] But this Court's well-

---

[1] There was no *Daubert* hearing where Verkovskaya could explain her methods.

[2] Plaintiff's expert reports were due during the middle of the discovery period, and therefore she could only rely on what had been produced to date, which had been limited by the trial court. Despite this, even were such a trial-standard proof of methodology required, Plaintiff's expert used the example of Plaintiff himself, and her extensive experience, to demonstrate that class members can be identified in multiple ways. Her methodology had many cross-checks that were ignored by the court. Instead, the court focused on only a part of her methods. Many courts in this Circuit and others have found Ms. Verkovskaya's methodology satisfactory.

embedded precedent holds that no such proof is required at the class certification stage, and courts throughout this Circuit have relied on that precedent for years.[3]

Perhaps that is why the District Court relied so heavily on out-of-Circuit decisions to support its conclusions. Simply put, either the District Court applied an incorrect standard here, or other courts in this Circuit have been applying the wrong one for years. In either scenario, this Court's review and clarification is urgently required. The District Court's actions underscore the very danger this Court has cautioned against: the failure to enforce the legislative purpose of the TCPA through the class action vehicle renders the statute "toothless," and leaves individual victims with little practical recourse against serial TCPA violators. *Krakauer*, 925 F.3d at 663.

If the District Court's decision stands undisturbed by this Court, future TCPA class actions will be much more difficult for plaintiffs to certify, all to the benefit of defendants who are violating the law. "It would be dispiriting beyond belief if courts defeated Congress' obvious attempt to vindicate the public interest

---

[3] Indeed, in Krakauer, class membership as defined by Ms. Verkovskaya was still being refined after trial. "The Court takes seriously the need to correctly and efficiently identify class members … The Court will direct Dr. Krakauer to revise the Group lists to remove those persons identified in this Order." *Krakauer v. Dish Network, L.L.C.*, No. 1:14-CV-333, 2018 WL 11429948, at *5 (M.D.N.C. Jan. 25, 2018), *on reconsideration in part sub nom. Krakauer v. Dish Network, LLC*, No. 1:14-CV-333, 2018 WL 11429949 (M.D.N.C. Apr. 5, 2018), Krakauer v. Dish Network, LLC, No. 1:14-CV-333, 2018 WL 11429949 (M.D.N.C. Apr. 5, 2018), *and aff'd*, 925 F.3d 643 (4th Cir. 2019), *and aff'd*, 925 F.3d 643 (4th Cir. 2019).

with interpretations that ignored the purpose, text, and structure of this Act at the behest of those whose abusive practices the legislative branch had meant to curb." *Id.* at 663. The District Court's denial of class certification here undercuts the very purpose of the TCPA and abandons the public interest in being free of abusive robocalling practices.

Based on the facts and law presented, this Court should permit Mr. Davis to appeal the District Court's errors.

## **BACKGROUND AND RELEVANT FACTS**

Plaintiff sought to certify a class of non-customers of Capital One who received prerecorded calls in violation of the TCPA: "All persons or entities throughout the United States (1) to whom Capital One initiated a call (2) directed to a number assigned to a cellular telephone service, but not assigned to a current account holder of Capital One (3) in connection with which Capital One used an artificial or prerecorded voice, (4) from four years before the filing of this action through the date of class certification." ECF No. 40, ¶ 27.

Anya Verkhovskaya, Plaintiff's proposed expert, opined that a five-step methodology (substantially similar to the one she utilized, and this Court endorsed, in *Krakauer*) reliably identifies potential class members for purposes of providing class notice:

Step One: Determine if a number is a cellular number.

Step Two: If a number is a cellular number, determine if it has been "disconnected" or if the user potentially changed during the class period. This can be done using telephone provider records, the Reassigned Number Database (the "RND"), and the call disposition codes in Defendant's business records as methods that each supplement the other. In light of the cross checks, the RND method can totally fail, and the expert's methodology would still be viable.

Step Three: Determine the date of disconnect for those numbers using telephone company records and other sources. (The disconnect date would have to be within the class period.)

Step Four: Using Defendant's call records and disposition codes, determine if Defendant made prerecorded calls to those numbers after the date of disconnection.

Step Five: For all remaining telephone numbers, identify the person who had the phone number after the date it was disconnected. This is often accomplished with the same data as used in Step 2.

Those people would receive class notice.

*See* ECF No. 85 at 10-11.[4]

---

[4] Because the issue of whether a class member is a customer of Capital One is an issue for trial it is not used herein, but if a person is a Capital One customer can easily be determined through Capital One's records or an affidavit.

In her written opinions, the expert showed that *all* of these methods identified Plaintiff as a member of the putative class. *See* ECF No. 85-4 at 14-16. Notwithstanding the paucity of evidence Plaintiff was afforded in the lower court due to discovery limitations set by the District Court, the expert also determined that her methodology would identify other potential class members. *See* ECF No. 85 at 10-11. Specifically, she did so by reviewing a court-ordered 5,000 number sample and found that 666 telephone numbers of the 5,000 sample numbers (approximately 13%) were flagged with the RND value "yes" (the "RND-Yes Numbers") indicating they could be in the class, subject to the other steps in the process. *See* ECF No. 172 at 13.

## **STATEMENT OF ISSUES PRESENTED.**

1) Did the District Court err in holding, at the class certification stage, that ascertainability methodologies must already have been "demonstrated" to "reliably identify those persons who are class members"?

2) Did the District Court err in finding that Plaintiff's expert's methodologies—each of which identified Plaintiff as a potential class member—would not reliably identify additional class members?

3) Does the issue of consent in a class defined as non-customers support a finding of lack of predominance?

4) Does the District Court's imposition of a new "proof of class membership" standard in the ascertainability analysis, where none had previously existed in this Circuit, create an imminent risk of inconsistent class certification decision-making?

5) Does the status of the case dictate in favor of immediate review?

## <u>THE RULE 23(f) STANDARD</u>

This Court's five-factor test for granting a Rule 23(f) petition comprises:

> (1) whether the certification ruling is likely dispositive of the litigation; (2) whether the district court's certification decision contains a substantial weakness; (3) whether the appeal will permit the resolution of an unsettled legal question of general importance; (4) the nature and status of the litigation before the district court (such as the presence of outstanding dispositive motions and the status of discovery); and (5) the likelihood that future events will make appellate review more or less appropriate.

*EQT Prod. Co. v. Adair*, 764 F.3d 347, 356–57 (4th Cir. 2014).

The Court views these factors holistically, and they are non-exhaustive, as Rule 23(f) review typically is appropriate where: "a district court's certification decision is manifestly erroneous and virtually certain to be reversed on appeal." *Id.* at 357. *Accord In re White*, 64 F.4th 302, 307 (D.C. Cir. 2023) (Rule 23(f) review typically warranted where "(1) there is a death-knell situation for either the plaintiff or defendant in that the class-certification decision will effectively end the party's ability to litigate; (2) the certification decision presents an unsettled and

7

fundamental issue of law relating to class actions, important both to the specific litigation and generally, that is likely to evade end-of-the-case review; or (3) the district court's class certification decision is manifestly erroneous.").

As detailed below, each of these factors warrants Rule 23(f) review here.

## **ARGUMENT**

I.     **The District Court Opinion Contains Substantial Weaknesses**

  A.     **The District Court Ignored This Circuit's Ascertainablity Standard**

The District Court ignored this Circuit's law in finding that

Ms. Verkhovskaya's opinions did not satisfy *Daubert* and could therefore not support ascertainabilty. *See* ECF No. 172 at 19. "The goal is **not** to identify every class member at the time of certification, but to **define a class** in such a way as to ensure that there will be some administratively feasible way for the court to determine whether a particular individual is a member **at some point**." *Krakauer v. Dish Network, L.L.C.,* 925 F.3d 643, 658 (4th Cir. 2019) (cleaned up; emphasis added) (quoting 7A Charles Alan Wright *et al.*, *Federal Practice and Procedure*, § 1760 (3d ed. 2005)).[5] *See also, e.g., Williams v. Big Picture Loans, LLC*, 339 F.R.D. 46, 55–56 (E.D. Va. 2021), *aff'd sub nom. Williams v. Martorello*, 59 F.4th 68 (4th Cir. 2023) (holding class ascertainable **even in the absence of class data** at

---

[5] In *Krakauer,* the class identification was altered even after trial. *Krakauer, supra*.

the certification stage); *In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18-MD-2836, 2020 WL 5778756, at *10 (E.D. Va. Aug. 14, 2020) ("As an initial matter, it is not necessary that a plaintiff demonstrate the proposed methodology has previously been employed; indeed, the methodology for ascertaining class members in any given case is arguably unique and has never previously been employed.") (cleaned up), *report and recommendation adopted*, No. 2:18MD2836, 2021 WL 3704727 (E.D. Va. Aug. 20, 2021).

This Court and courts in this circuit have spoken about the role of Rule 702 and ascertainability, including specifically in regard to Plaintiff's expert. In *Krakauer v. Dish Network, L.L.C.*, No. 1:14-CV-333, 2015 WL 5227693, at *6 (M.D.N.C. Sept. 8, 2015), the court held, in evaluating Ms. Verkhovskaya, that it "need not determine that the proffered expert [evidence] is irrefutable or certainly correct" because expert evidence is subject to testing by vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof. The *Krakauer* court further held that her opinions were not excludable because she may have improperly defined certain codes, that some of the underlying data Ms. Verkhovskaya used was incorrect, or that some of the conclusions she drew from her analyses are wrong. *Id.* "If Ms. Verkhovskaya was wrong in her analysis of SSN's IDNC list, this may undermine the weight and credibility of her report, but that does not affect admissibility." *Id.* "The alleged

deficiencies with Ms. Verkhovskaya's results go 'more to the weight of the expert [evidence] than to its Daubert admissibility.'" (cite omitted) (noting that the test is not whether the 'expert might have done a better job'); *Campbell v. Fawber*, 975 F. Supp. 2d 485, 500 (M.D. Pa. 2013) (noting that challenges to the accuracy of an expert's conclusions go to the weight of the evidence rather than its admissibility)." *Id*. at *10.

The *Krakauer* court found Ms. Verkhovskaya well-qualified to address issues related to locating and updating addresses for class members and identifying those with incomplete name information from telephone numbers, the same issues as in the case herein. *Krakauer v. Dish Network, L.L.C.*, No. 1:14-CV-333, 2018 WL 11429948, at *2 (M.D.N.C. Jan. 25, 2018), *on reconsideration in part sub nom. Krakauer v. Dish Network, LLC*, No. 1:14-CV-333, 2018 WL 11429949 (M.D.N.C. Apr. 5, 2018), *and aff'd*, 925 F.3d 643 (4th Cir. 2019), *and aff'd*, 925 F.3d 643 (4th Cir. 2019).

Other courts in the circuit have also found her opinions valuable in ascertaining a class. In *Vance v. DirecTV, LLC*, No. 5:17-CV-179, 2022 WL 3044653, at *5 (N.D.W. Va. Aug. 1, 2022), *appeal dismissed*, No. 22-1958 (L), 2023 WL 6618922 (4th Cir. Oct. 6, 2023), the court found Ms. Verkovskaya's opinions satisfactory for ascertainability, citing to *Krakauer*: "In the district court there, Judge Eagles denied the defendant's motion to exclude Ms. Verkhovskaya's

testimony at the class certification stage, finding her qualified by her experience analyzing call records for this purpose in hundreds of cases, and concluded that her "reverse lookup" methodology-that is, her process of identifying class member names and addresses through call records-sufficiently reliable."

Thus, the District Court misapplied the ascertainabilty standard and erred in excluding her opinions, and the decisions should be reversed on that basis.

### B. Even Under the Wrong Standard, Plaintiff's Expert Methodology Satisfied The Ascertainability Standard

The District Court expressly acknowledged that Plaintiff's expert, Ms. Anya Verkhovskaya, has "extensive experience as an expert witness **with respect to identifying class members** for the purpose of providing notice in TCPA cases. ... The Court finds **no deficiencies in her credentials** that would disqualify her as an expert in this case." ECF No. 172 at 10 n.6 (emphasis added). Yet the District Court ignored the findings detailed in her opinions,[6] as well as the holdings of this Court and other courts that have specifically analyzed and approved of the ascertainability work of Plaintiff's subject matter leading expert.

#### 1) Plaintiff is the Proof of Concept

The expert demonstrated the effectiveness of her five-step methodology by employing it to identify Plaintiff himself, and detailing how the same process

---

[6] In fact, Defendant's expert has used a very similar methodology for prerecorded class certification purposes.

11

identifies other class members. At the threshold, Plaintiff's telephone number was one of millions of unique numbers identified by Capital One's business records as having received a prerecorded call during the class period. From there, the expert's five-step process showed:

First, Plaintiff's number is a cellular telephone number. The expert's ability to determine whether a telephone number is cellular was not challenged.

Second, the subject telephone number was disconnected from Defendant's customer and reassigned to Plaintiff during the class period, as shown through: (i) business records of T-Mobile (Plaintiff's telephone service provider), which was obtained via subpoena during discovery, (ii) a query of the Reassigned Number Database (which Capital One does not use); and (iii) Capital One's business records.

Third, those same means demonstrate the date Plaintiff's number was disconnected.

Fourth, Capital One's records show that Plaintiff's number received four prerecorded calls after the date of disconnection.

Fifth, T- Mobile's records show that Plaintiff was the account holder at the time (after the date of disconnection) Defendant placed the prerecorded calls. *See* ECF No. 85-4 at 14-16. Thus Ms. Verkhovskaya's methodology ascertained that Plaintiff was a potential class member.

Capital One's records showed that Plaintiff was not a customer of Capital One, thus bringing him within the class definition.

As described *supra*, utilizing the 5,000 number sample, Plaintiff's expert also determined that her methodology would work to identify other potential class members in the same manner which Plaintiff had been identified. *See* ECF No. 85 at 10-11.

The District Court ignored many of the steps Plaintiff's expert had to cross check her findings, most significantly the use of telephone company records. Instead, the District Court focused on intermediate steps which by definition do not provide a complete picture. In so doing, it erred in denying class certification.

### 2) The Expert's Core Methodology has been Accepted by this Court and Many Others

The District Court observed that "[t]here are several guideposts to help determine the reliability of an expert opinion in conjunction with those factual findings: (1) whether the opinion can be tested, (2) 'whether the theory or technique has been subjected to peer review and publication[,]' (3) 'the known or potential rate of error' and (4) general acceptance of the methodology used." ECF No. 172 at 10 (citations omitted).

Yet the District Court ignored this standard. Indeed, the fundamental notice methodologies the expert explained to the District Court have been accepted by this Court in the *Krakauer* case and numerous others set forth above, except that

13

the addition of the RND as a resource makes the process even more reliable. As in

*Krakauer*, the expert will utilize a five-step process, and she is eminently qualified.

*See Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 391 (M.D.N.C. 2015), *aff'd*,

925 F.3d 643 (4th Cir. 2019).

> The Court has reviewed a number of Ms. Verkhovskaya's reports
> and declarations during the course of these proceedings and heard
> her testify at trial. She is well-qualified to address issues related to
> locating and updating addresses for class members and identifying
> those with incomplete name information from telephone numbers.
> Based on its familiarity with her work over time and on its
> personal, in-court observations of her testimony, the Court finds
> her to be a credible witness and has no concerns about her honesty
> or integrity.

*Krakauer v. Dish Network, L.L.C.*, No. 1:14-CV-333, 2018 WL 11429948, at *2

(M.D.N.C. Jan. 25, 2018), *on reconsideration in part sub nom. Krakauer v. Dish*

*Network, LLC*, No. 1:14-CV-333, 2018 WL 11429949 (M.D.N.C. Apr. 5, 2018),

*and aff'd,* 925 F.3d 643 (4th Cir. 2019).

In evaluating the same expert, utilizing similar data, this Court found: "The

class members could therefore be identified on a large-scale basis and notified of

the class action accordingly." *Id.*, 925 F.3d at 658. Numerous other courts are in

accord. *See* Section I.A above.

Instead of this Circuit's precedent, the District Court relied heavily on

district court opinions from outside this Circuit. *See Hunter v. Time Warner Cable*

*Inc.*, No. 15-CV-6445 (JPO), 2019 WL 3812063, at *11 (S.D.N.Y. Aug. 14, 2019),

cited five times. But another court from the SDNY recently rejected the *Hunter*

reasoning and accepted the testimony of Ms. Verkhovskaya.

> Defendant's argument that Verkhovskaya's 'reverse lookup' or
> 'reverse append' methodology is unreliable is unpersuasive. The
> progression of Verkhovskaya's reports shows that the need to
> reverse-append data has diminished as more information on the
> class has become available. Verkhovskaya's methodology also
> uses more sources than the process disapproved in *Hunter v. Time
> Warner Cable Inc.*, No. 15 Civ. 6445, 2019 WL 3812063, at *10-
> 12 (S.D.N.Y. Aug. 14, 2019), including backup sources if
> LexisNexis data is lacking. This methodology has withstood
> *Daubert* motions in other cases more analogous than *Hunter*. *See,
> e.g.*, *Krakauer v. Dish Network, L.L.C.*, No. 14 Civ. 333, 2015 WL
> 5227693, at *11 (M.D.N.C. Sept. 8, 2015).

*Watson v. Manhattan Luxury Automobiles, Inc.*, No. 20 CIV. 4572 (LGS), 2022 WL

4586407, at *4 (S.D.N.Y. Sept. 29, 2022).

Also, just a few weeks ago a court in Washington, in a prerecorded wrong

number case, found Verkhovskaya's methodology, which is virtually identical to

that used herein, adequate:

> Anya Verkhovskaya, proposes a methodology for dealing with
> this issue. Verkhovskaya states she can determine who had a
> telephone number at a given time … (cite omitted) She will use
> this reverse lookup service … (cite omitted) … And to ensure the
> data is accurate, following the reverse lookup process,
> Verkhovskaya will coordinate **a telephone carrier subpoena
> process** to obtain the user/subscriber's name and address
> associated with the telephone numbers in question during the
> relevant time period. (cite omitted) The information obtained via
> the subpoena process would be cross-checked against the
> information found from the reverse lookup to confirm potential
> class members' identities and **remove all United members'
> telephone numbers**. Given the layers of cross-checking for this

15

process, the Court finds Verkhovskaya's proposed methodology provides a class-wide means of distinguishing between members and non-members and avoiding the **consent** issue United raises.

*Samson v. United Healthcare Servs., Inc.*, No. 2:19-CV-00175, 2023 WL 6793973, at *9–10 (W.D. Wash. Oct. 13, 2023). *See also, e.g., Williams v. PillPack LLC*, 343 F.R.D. 201, 211 (W.D. Wash. 2022) ("Given Verkhovskaya's ability to cross-check results, and the general acceptance of this methodology, the Court finds Verkhovskaya's methodology sufficient at this stage in the litigation.").

Thus, the District Court erred in excluding Ms. Verkovskaya.

### C.    The Issue of Consent does not Create a Predominance Issue

In finding a lack of predominance, the District Court held: "There are clearly common questions pertaining to this class, and if the issue of consent could actually be resolved through class definition that excludes Capital One customers, the Court would see no meaningful individualized inquiry and therefore no predominance issue." ECF No. 172 at 25.

This finding was a plain error, as Plaintiff does define his class— objectively—to include only all persons or entities throughout the United States who received prerecorded class which were "(2) directed to a number assigned to a cellular telephone service, **but not assigned to a current account holder of Capital One** …" ECF No. 40, ¶ 27 (emphasis added). Thus, the class is defined as non-customers, and consent is not an issue that should defeat predominance since

the determination if a claimant is a Capital One customer can be made using

Capital One's records and therefore consent is not an issue. *See, e.g., Krakauer*,

925 F.3d at 655 ("Other relevant issues, such as the **existence of a business**

**relationship** between the solicitor and the recipient of the call, **are likely to be**

**proven by records kept by the defendant company**. The problems that so often

plague class actions under Rule 23(b)(3) are wholly absent from this scheme.")

(emphasis added); *Bryant v. King's Creek Plantation, L.L.C.*, No. 4:20-CV-00061,

2020 WL 6876292, at *5 (E.D. Va. June 22, 2020). ("However, as previously

noted, the Robodialing Class definition does not include lack of consent to the

calls. King's Creek has failed to demonstrate that the case would be consumed and

overwhelmed by …the issue of consent alone.") (cleaned up; emphasis added);

*Wesley v. Snap Fin. LLC,* 339 F.R.D. 277, 299 (D. Utah 2021) ("Snap's consent

argument based on Wesley's use of the call logs fails to demonstrate an

individualized issue that would predominate over common issues to the class

because the identified consent issues do not translate to Wesley's proposed class

members—noncustomers of Snap. …   Snap has **not** identified any individual

issues among the **class comprised of noncustomers** of Snap that would overcome

Wesley's demonstration of predominance.") (emphasis added), *leave to appeal*

*denied*, No. 21-600, 2022 WL 482156 (10th Cir. Feb. 16, 2022); *see also Head v.*

*Citibank, N.A.,* 340 F.R.D. 145, 153 (D. Ariz. 2022).

In sum, the District Court's certification decision contains substantial

weakness in that it fashions a new standard for ascertainability which is

inconsistent with this Court's well-established precedent; is manifestly erroneous

in ignoring the documented evidence of ascertainability here and in

misunderstanding the general *absence* of consent in a class comprising only non-

customers; and must be reversed on appeal.

## II.    The Appeal will Permit the Resolution of a Legal Question of General Importance Because Allowing the Decision to Stand Will Create Substantial Uncertainty in a Frequently-Asked and Critical Question of Law: What is the Standard for Ascertainability in this Circuit?

As set forth in Section I, the District Court improperly grafted a *Daubert*-

style trial "proof of class member identity" element onto the ascertainability

component of the class certification analysis. In so doing, the District Court

necessarily relied on case law from outside this Circuit. *See, e.g.,* ECF No. 172 at

18.[7]

This Court has made clear that ascertainability should not be viewed through

a Rule 702/*Daubert* lens but measured by the definition of the putative class: class

action treatment is appropriate **except** where the definition renders it "impossible"

---

[7] Similarly flawed is the District Court's injection of over- and under-inclusivity analyses in the ascertainability analysis. *See* ECF No. 172 at 13-16. *Cf., e.g., Byrd v. Aaron's Inc.*, 784 F.3d 154, 167–68 (3d Cir. 2015), *as amended* (Apr. 28, 2015) ("The ascertainability standard is neither designed nor intended to force all potential plaintiffs who may have been harmed in different ways by a particular defendant to be included in the class in order for the class to be certified.").

to identify class members through objective criteria "without extensive and individualized fact-finding or 'mini-trials.'" *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 592-94 (3d Cir. 2012)). *See also Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 658 (4th Cir. 2019) ("The goal is not to identify every class member at the time of certification, but to define a class in such a way as to ensure that there will be some administratively feasible way for the court to determine whether a particular individual is a member at some point.").

The clarity of this Circuit's current standard has allowed district courts to apply it consistently and uniformly, even where class data was not yet available. *See, e.g., Williams v. Big Picture Loans, LLC*, 339 F.R.D. 46, 55 (E.D. Va. 2021) ("while the parties are not presently in possession of the detailed loan data for each of the proposed class members, that is not to say that they are totally ignorant of the likely candidates for class membership … The due process question is not whether the identity of class members can be ascertained with perfect accuracy at the certification stage but whether the defendant will receive a fair opportunity to present its defenses when putative class members actually come forward. … [holding otherwise] would run contrary to the Fourth Circuit's clear explanation of the ascertainability standard") (cleaned up), *aff'd sub nom. Williams v. Martorello*, 59 F.4th 68 (4th Cir. 2023); *In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18-MD-

19

2836, 2020 WL 5778756, at *10 (E.D. Va. Aug. 14, 2020) ("As an initial matter, it

is not necessary that a plaintiff demonstrate the proposed methodology has

previously been employed; …") (cleaned up), *report and recommendation*

*adopted*, No. 2:18MD2836, 2021 WL 3704727 (E.D. Va. Aug. 20, 2021); *Gaston*

*v. LexisNexis Risk Sols., Inc.*, 483 F. Supp. 3d 318, 334 (W.D.N.C. 2020)

("Members of this class are thus easily defined by objective criteria. …  Indeed, if

Defendants' arguments prevailed no class of clearly wronged individuals could

ever be certified. Also, ascertainability does not require that every member of the

class must be knowable to an absolute certainty."); *Mey v. Venture Data, LLC*, No.

5:14-CV-123, 2017 WL 10398569, at *11 (N.D.W. Va. June 6, 2017) ("federal

district courts have consistently certified classes under the TCPA identified, as

here, only by telephone numbers. In *Birchmeier v. Carribean Cruise Line, Inc.*,

302 F.R.D. 240, 245-46 (N.D. Ill. 2014), the district court rejected an

ascertainability challenge and certified a TCPA class that was at the time of

certification, known only by a list of 970,000 phone numbers. … Many other

courts have certified similar classes in TCPA cases.")).

The current standard is not only widely applied, but also serves important

public policy objectives. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591,

617 (1997) ("[t]he policy at the very core of the class action mechanism [is] to

overcome the problem that small recoveries do not provide the incentive for any

individual to bring a solo action prosecuting his or her rights"); *Byrd v. Aaron's Inc.*, 784 F.3d 154, 176 (3d Cir. 2015), *as amended* (Apr. 28, 2015) (Rendell, J., concurring) ("Our ascertainability doctrine … has ignored an equally important policy objective of class actions: deterring and punishing corporate wrongdoing. … **The rigorous application of the ascertainability requirement translates into impunity for corporate defendants who have harmed large numbers of consumers in relatively modest increments**.") (emphasis added).

Absent this Court's review, the District Court's defenestration of the decades-old standard in this Circuit will create substantial uncertainty in a frequent and critical question of law.

## III.  The Denial of Class Certification is Dispositive Here, and Immediate Appellate Review is Necessary and Appropriate

The matter is now ripe for merits disposition before the trial court, and such disposition will effectively preclude Plaintiff from later appeal. Procedurally, the "one-way intervention rule" will raise issues about later appeal. One-way intervention concerns arise whenever dispositive merits questions are resolved before class membership is finally determined. *See, e.g., In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18-MD-2836, 2021 WL 9870367, at *3 (E.D. Va. May 7, 2021). Specifically, a merits determination (*e.g.*, Plaintiff prevails after a trial of his individual claim) might foreclose Plaintiff from later certifying a redefined class or appealing this denial of class certification. Conversely, a loss at trial could

subject Plaintiff to law of the case or collateral estoppel challenges, as well as adequacy and other Rule 23 obstacles, in later attempting to represent a class. *See, e.g., Zenith Labs., Inc. v. Carter-Wallace, Inc.*, 530 F.2d 508, 512 (3d Cir. 1976).

Second, practical realities amplify the risk that absent class members' harms will go unredressed. *See In re White*, 64 F.4th 302, 310 (D.C. Cir. 2023) ("To start, if the case is required to go forward as an individual action and the named plaintiffs prevail, they will have little incentive to bear the risk and expense of appealing the class certification denial.").

Finally, if the District Court's decision stands, absent class members who have valid claims, but for whom the statute of limitations has run, will be time-barred from seeking relief.

Thus, both practical and procedural considerations warrant interlocutory review here.

## **RELIEF SOUGHT**

As detailed above, each of the relevant considerations under Rule 23(f) warrants interlocutory review here. Plaintiff Clarence Davis respectfully submits that this Court should accept his petition for appeal.

Dated: November 2, 2023   Respectfully submitted,

           */s/ James S. Wertheim*
           James S. Wertheim (0029464)
           LawHQ, PC
           299 S. Main St., #1300
           Salt Lake City, UT 84111
           (ph.) 385-285-1090
           jim@lawhq.com

           Terry C. Frank (VSB No. 74890)
           Terry Frank Law
           108 E. Grace St., Suite 01
           Richmond, VA 23219
           (ph.) 804-899-8089 • (fax) 804-899-8229
           terry@terryfranklaw.com

           *Attorneys for Plaintiff/Petitioner*

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. _____    **Caption:** Clarence Davis v. Capital One

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✓] this brief or other document contains ____5,192____ [*state number of*] words

[ ] this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[✓] this brief or other document has been prepared in a proportionally spaced typeface using
Microsoft Word _____ [*identify word processing program*] in
Times New Roman 14 pt. _____ [*identify font size and type style*]; **or**

[ ] this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s) James S. Wertheim _____

Party Name Plaintiff/Petitioner Clarence Davis _____

Dated: Nov. 2, 2023 _____

# CERTIFICATE OF SERVICE

**Instructions for Electronic Filers:** For persons filing electronically, CM/ECF serves all registered CM/ECF users, and no certificate of service is required for such service. A certificate of service is required from an electronic filer, however, in the following circumstances:

- To certify that a non-user of CM/ECF has been served;
- To certify that a manual filing (not available in electronic form), has been served;
- To certify that a sealed document has been served;
- To certify that a case-initiating document, such as a petition for review, petition for permission to appeal, or petition for writ of mandamus, has been served.

**Instructions for Paper Filers:** For persons filing in paper form, service must be accomplished outside CM/ECF, and a certificate of service is required for all documents.

Case No. _____    Case Caption Clarence Davis v. Capital One
_____

I certify that on __Nov. 2, 2023__ , the Petition for Permission to Appeal Order Denying Class Certification
                              (date)                                    (document title)
was served by [ ] personal delivery; [ ] mail; [ ] third-party commercial carrier; or [x] email

(with written consent) on the following persons at the addresses or email addresses shown:

(Name and Address or Email Address )
 Jon S. Hubbard, Esq.
    (jon.hubbard@troutman.com)
 Robert A. Angle, Esq.
    (robert.angle@troutman.com)
 Brooke K. Conkle, Esq.
    (brooke.conkle@troutman.com)
 Daniel JT McKenna, Esq.
    (mckennad@ballardspahr.com)

/s/ James S. Wertheim _____        _____Nov. 2, 2023_____
             Signature                                            Date

01/28/2020 SCC